CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED

July 17, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ Nik Sams**
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

Caroline Ayres,                          )
                                         )
                 Plaintiff,              )
                                         )
v.                                       )          Civil Action No. 3:25-cv-00096
                                         )
Mercedes-Benz USA, LLC *et al.*,         )
                                         )
                 Defendants.             )

**MEMORANDUM OPINION**

Plaintiff Caroline Ayres, an attorney proceeding *pro se*, alleges that a Mercedes-Benz vehicle she purchased from Cars2us of Woodbridge ("Cars2us") began experiencing various mechanical issues shortly after she purchased it. Many of these issues persisted for years despite her efforts to repair them. Ayres alleges that Defendants Cars2us, Mercedes-Benz USA, LLC ("Mercedes"), and Jed Aboulhosn were required to either refund the purchase of the vehicle or repair it, and they failed to do either. Ayres initially filed this suit in Albemarle County Circuit Court seeking damages and injunctive relief for a variety of state law claims and a federal Magnuson-Moss Warranty Act claim. On the same day, she filed a complaint in Albemarle County General District Court alleging a Magnuson-Moss Warranty Act claim and a slightly different set of state law claims. Mercedes eventually removed the Albemarle County Circuit Court action to this court.

This matter is before the court on Defendants Cars2us and Aboulhosn's motions to dismiss or stay. (Dkts. 4, 5.) Defendants ask this court to dismiss or stay this suit on the

grounds that Ayres has filed an allegedly duplicative lawsuit in state court.  For the following reasons, the court will deny Defendants' motions.

## I.   Background

### A.  Factual History[1]

On or about October 30, 2023, Ayres purchased a used 2015 Mercedes-Benz ("subject vehicle") from Cars2us, a car dealership in Woodbridge, Virginia.  (Compl. ¶¶ 3, 6 (Dkt. 1-1).)  Aboulhosn is the president of Cars2us, and both Aboulhosn and Cars2us sell vehicles manufactured by Mercedes.  (*Id.* ¶¶ 3–4, 6.)

Before purchasing the subject vehicle, Ayres discussed the car with Defendants.[2]  (*Id.* ¶¶ 22–27.)  Defendants represented that the subject vehicle "was in 'great' condition," "was in good mechanical condition," "was sold with a two-year warranty,"[3] and that "Defendants would replace the car if there was anything wrong with it."  (*Id.* ¶ 27.)  During the transaction, Ayres received a Buyer's Guide that contained a checkmark next to the option "AS IS--NO WARRANTY."  (*Id.* ¶¶ 30–31.)  But Defendants told Ayres that the subject vehicle was sold with a two-year warranty, notwithstanding the "as is" provision selected on the Buyer's Guide. (*Id.* ¶ 32; *see id.* ¶ 7 (alleging that, the vehicle had a "two[] year – 24,000 mile" factory warranty at the time of purchase).)

---

[1] The facts are taken from Ayres's complaint and the attached exhibits.  These facts are accepted as true when resolving the motion to dismiss.  *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

[2] Here, and throughout Ayres' complaint, it is unclear whether her use of "Defendants" refers to all three Defendants.  It is also unclear whether her interactions were solely with Aboulhosn, or if she spoke with any other representatives of Cars2us or Mercedes.

[3] One paragraph in Ayres's complaint states that Defendants represented the vehicle was sold with a two-month warranty. (Compl. ¶ 105(c).)  But Ayres repeatedly states elsewhere in her complaint that it was a two-year warranty.  Thus, the "two-month" allegation appears to be a typographical error.

Ayres purchased the subject vehicle that day, October 30, through a "retail installment transaction" with Defendants. (*Id.* ¶ 29.) The parties "agreed that [Ayres] would pay $18,990.00 for the vehicle, but financed the cost of the vehicle for 66 months." (*Id.* ¶ 28.) Ayres paid a down payment of $6,000.00. (*Id.*) The vehicle's purchase cost was $35,909.22 after finance and interest charges, plus tax. (*Id.*)

The subject vehicle "immediately broke down" after Ayres drove it from Woodbridge to Charlottesville, Virginia on the day of purchase. (*Id.* ¶¶ 34–35.) It "began to overheat and leak oil." (*Id.* ¶ 35.) Ayres sought to rescind the sale and asked for the return of her down payment. (*Id.* ¶ 36.) Defendants refused. (*Id.*) Ayres then paid for repairs to the vehicle, but the repairs were unsuccessful, and it remained undrivable. (*Id.* ¶¶ 37–38.) Ayres has experienced other mechanical issues with the vehicle, at least some of which still existed at the time she filed her complaint. (*See id.* ¶¶ 10–12, 16–17, 39 (alleging that "all dash board warning lights . . . had been turned off by Defendants" but all turned back on after a repair shop visit, and that the vehicle had a defective radiator, coolant reserve, engine harness, cam cover, cam magnets, and intake gaskets).)

Once she noticed the defects, Ayres attempted to repair them at an authorized dealership on at least three occasions. (*Id.* ¶ 11.) As of the date Ayres filed her initial state court complaint, October 28, 2025, the vehicle had been "out-of-service for almost two years" due to repairs seeking to address the various mechanical issues. (*Id.* ¶¶ 11, 13.) Ayres has notified Defendants of the issues "on numerous occasions." (*Id.* ¶¶ 18, 46.) Still, Defendants

have failed to repair the vehicle and have refused to buy back or reimburse Ayres. (*Id.* ¶¶ 14, 18.)

## B. Procedural History

Ayres, proceeding *pro se*,[4] initially filed this action in the Albemarle County Circuit Court on October 28, 2025, Case No. 003CL2500201300. (Dkt. 1-1; *see* Dkt. 1 at 1.) In the circuit court complaint, Ayres brings eight claims against Defendants.[5] (*Id.* ¶¶ 51–110.) Count I alleges breach of factory warranty. (*Id.* ¶¶ 51–57.) Count II alleges breach of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (*Id.* ¶¶ 58–68.) Count III alleges a violation of the Virginia Motor Vehicle Warranty Enforcement Act, Virginia Code §§ 59.1-207.9 through 59.1-207.16. (*Id.* ¶¶ 69–76.) Count IV alleges breach of express warranties. (*Id.* ¶¶ 77–82.) Count V alleges breach of implied warranty of merchantability. (*Id.* ¶¶ 83–88.) Count VI alleges breach of implied warranty of fitness. (*Id.* ¶¶ 89–98.) Count VII alleges breach of the duty of good faith. (*Id.* ¶¶ 99–103.) The final count alleges fraud and revocation of contract.[6] (*Id.* ¶¶ 104–10.) Ayres asks for compensatory damages of $100,000, punitive damages of $200,000, and various forms of injunctive relief. (*Id.* at 14.)

In November 2025, Defendant Cars2us filed a "plea in bar / agreement to arbitrate" in the Albemarle County General District Court ("GDC") action. (Dkt. 4-3.) Cars2us also moved to "dismiss based upon prior pending action" in the Albemarle County Circuit Court

---

[4] "[W]hen a *pro se* plaintiff is [her]self an attorney, [s]he is not entitled to the liberal construction of pleadings ordinarily afforded *pro se* plaintiffs." *White v. Key*, No. 6:23-cv-00007, 2023 WL 4229037, at *1 n.1 (W.D. Va. June 8, 2023), *aff'd*, No. 23-1683, 2024 WL 1615023 (4th Cir. Apr. 15, 2024).

[5] Because Ayres does not specify certain Defendants for each count, the court assumes that she brings all eight claims against all three Defendants.

[6] Ayres refers to this as "Count VI," which appears to be a typographical error, as she already alleged "breach of implied warranty of fitness" as Count VI. (Compl. at 8.)

suit. (Dkt. 4-4.) Unlike Cars2us's GDC plea in bar, its circuit court motion to dismiss was jointly filed with Aboulhosn. (*Id.* at 1.) Defendant Mercedes filed an answer in the Albemarle County Circuit Court action on December 2, 2025. (Dkt. 1-2.) Then, on December 12, 2025, Mercedes filed a Notice of Removal to this court, with the consent of its co-defendants. (Dkt. 1 ¶ 17.) Cars2us and Aboulhosn filed separate but identical motions to dismiss on December 29, 2025, asking this court to dismiss or, in the alternative, stay the federal suit. (Mots. to Dismiss (Dkts. 4, 5) [hereinafter "MTDs"].) Ayres responded in opposition on February 1, 2026. (Pl.'s Resp. (Dkt. 12).)

On October 28, 2025, the same day that Ayres filed Case No. 003CL2500201300 in Albemarle Circuit Court, she also sued Cars2us in the Albemarle County GDC. (*See* MTDs ¶ 1; Dkt. 4-2; Pl.'s Resp. at 2.) From the court's review of the Virginia state courts' public dockets, it appears that the lawsuit was transferred to Albemarle County Circuit Court on February 18, 2026, and remains active under Case No. CL2600040800.

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). It does not "resolve contests surrounding the facts or the merits of a claim." *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024) (internal quotation marks omitted) (quoting *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023)). When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir.

2017).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  To avoid dismissal under Rule 12(b)(6), the complaint must allege more than "labels and conclusions" or "naked assertion[s]" unsupported by "further factual enhancement."  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

In addition to moving for Rule 12(b)(6) dismissal, Defendants Cars2us and Aboulhosn alternatively move to stay the federal proceedings.  When a court decides to abstain under the *Colorado River* abstention doctrine, the district court may stay or dismiss the case.  The court "should dismiss the case if 'the determinative issues will unfailingly be resolved within the parameters of the state-court litigation . . . as no further action by the district court is anticipated.'"  *Sto Corp. v. Lancaster Homes, Inc.*, 11 F. App'x 182, 189 (4th Cir. 2001) (unpublished per curiam decision) (quoting *Cox v. Plan. Dist. I Cmty. Mental Health and Mental Retardation Servs. Bd.*, 669 F.2d 940, 943 (4th Cir. 1982)).  A stay is the appropriate disposition "if the federal case has a chance of continuing even after the resolution of the state case . . . ."  *Id.* (citing *Kelser v. Anne Arundel Cnty. Dep't of Soc. Servs.*, 679 F.2d 1092, 1094 (4th Cir. 1982)).

### III.    Analysis

Cars2us and Aboulhosn argue that this federal suit should be dismissed or stayed under either (1) the rule against claim splitting or (2) *Colorado River* abstention.  (MTDs at 3–4.)

Because the claim splitting doctrine does not apply in this context, and the state and federal proceedings at issue are not parallel, the court will neither dismiss nor stay this federal suit.

## A. Claim Splitting

The rule against claim splitting, which is based in principles of *res judicata*, "prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 264–65 (4th Cir. 2008) (unpublished per curiam decision). "[T]he general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The rule against claim splitting is invoked to address duplicative lawsuits when *both* suits are filed in federal courts. *See Sensormatic*, 273 F. App'x at 265 (applying the rule against claim splitting and, in doing so, explaining that "[w]hen one suit is pending in federal court, a plaintiff has no right to assert another action 'on the same subject *in the same court*, against the same defendant at the same time'" (emphasis added)).

But district courts in the Fourth Circuit have explicitly declined to apply the claim splitting doctrine when the duplicative suits are filed in federal and *state* court. *See, e.g.*, *O'Dell v. CMH Homes, Inc.*, No. 1:15-cv-00063, 2015 WL 4041302, at *3–4 (N.D.W. Va. July 1, 2015) ("[The claim splitting] doctrine, however, has not been extended to apply to parallel state and federal actions."); *Ayala v. Wake Cnty., N.C.*, No. 5:24-cv-00524, 2025 WL 1522994, at *2 (E.D.N.C. May 28, 2025) (recognizing that "courts routinely apply claim-splitting to prevent duplicative suits in *federal* court" but that, because the instant case involved a pending state proceeding, "the rule against claim-splitting is inapplicable here and does not bar plaintiffs'

claims"). *Colorado River* and its progeny articulate the standards for a federal court to abstain on the grounds of a parallel proceeding in state court. *See Colorado River*, 424 U.S. at 817 ("[A]s between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910))). Since Defendants' motions to dismiss point to the active Albemarle County Circuit Court case as grounds for a dismissal or a stay of the federal suit, (MTDs at 1–2), *Colorado River* abstention—rather than the doctrine of claim splitting—is the appropriate framework for resolving their motions.

### B. *Colorado River* Abstention

"[F]ederal courts are bound by a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005) (quoting *Colorado River*, 424 U.S. at 817). As a general rule, "our dual system of federal and state governments allows parallel actions to proceed to judgement until one becomes preclusive of the other." *Id.* "However, under the *Colorado River* doctrine, a federal court may abstain from exercising jurisdiction over a duplicative federal action for purposes of 'wise judicial administration.'" *vonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017) (quoting *Colorado River*, 424 U.S. at 818). To abstain under the *Colorado River* doctrine, "a court must first determine whether the federal and state actions are parallel." *Id.* at 168. If the court concludes the actions are parallel, it must then balance several factors to determine whether exceptional circumstances warrant abstention. *Id.* A federal court "must apply *Colorado River* abstention parsimoniously"; it should only abstain in "exceptional circumstances" and under

the "clearest of justifications." *vonRosenberg*, 849 F.3d at 167 (cleaned up). "If there is any substantial doubt" that "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," "it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).

    1.  Parallel Proceedings

First, the court must determine whether Ayres's two suits against Defendants are "parallel" within the meaning of the *Colorado River* doctrine. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991). The requirement of parallel federal and state suits has been "strictly construed," and "the parties involved [must] be almost identical." *Chase Brexton*, 411 F.3d at 464.

But having almost identical parties alone is not sufficient to find that the suits are parallel. Additionally, even when both suits arise from the same factual circumstances, suits may not qualify as parallel if different issues are raised or different remedies are sought. *See New Beckley*, 946 F.2d at 1074 ("A difference in remedies is a factor counseling denial of a motion to abstain."); *Chase Brexton*, 411 F.3d at 465 ("In *New Beckley*, we held that the state and federal actions, although 'virtually identical,' were not parallel because the remedies sought and the issues raised were not the same."); *vonRosenberg*, 849 F.3d at 168 ("[E]ven state and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies.").

Here, the parties in the state and federal actions are not identical.  It appears that Cars2us is the only defendant in the state action, (Dkt. 4-2; Pl.'s Resp. at 2), while the federal action names Mercedes, Cars2us, and Aboulhosn as defendants, (Compl. at 6).  (*See also* MTDs at 1 ("Plaintiff impermissibly seeks to maintain parallel litigation in two courts against the same *Defendant, Cars2us of Woodbridge* based on the same underlying dispute." (emphasis added)); Dkt. 4-3 at 1 (discussing only Cars2us as a defendant in the GDC action).)  This does not automatically preclude a finding that the actions are parallel, as the parties need only be "*almost identical.*"  *Chase Brexton*, 411 F.3d at 464 (emphasis added).  However, the difference in the parties weighs against finding that the actions are parallel.  *See Doe v. Mast*, 741 F. Supp. 3d 409, 452 (W.D. Va. 2024) (holding that state and federal suits were not parallel when there were the same plaintiffs but additional defendants in the federal suit).

Ayres also raises additional issues and seeks different remedies in her federal and state actions.  Her Warrant in Debt for the state action asserts claims for breach of contract, breach of warranty, breach of implied warranty, breach of warranty of merchantability, and violation of the Magnuson-Moss Warranty Act.  (Dkt. 4-1 at 1.)  Her complaint here, by contrast, adds claims for violation of the Virginia Motor Vehicle Warranty Enforcement Act, breach of the duty of good faith, and fraud.  (Compl. ¶¶ 51–110.)  Ayres's Warrant in Debt seeks approximately $41,900 from Cars2us.  (Dkt. 4-1 at 1.)  In her federal action, Ayres seeks $100,000 in "actual, compensatory, [and] incidental damages," $200,000 in punitive damages, and various forms of injunctive and declaratory relief.  (Compl. at 14.)

The differences in the parties, the issues raised, and the remedies sought all indicate that Ayres's state and federal actions are not parallel.  Despite some overlap in the parties and the issues, the actions are not "totally duplicative" of each other.  *See McLaughlin v. United Virginia Bank*, 955 F.2d 930, 935 (4th Cir. 1992).  As a result, "the state action will not resolve every claim at issue in the federal action."  *See vonRosenberg*, 849 F.3d at 169.  The Fourth Circuit has routinely held that courts "must address whether abstention is appropriate based upon the current posture of [] state court actions."  *Gannett Co. v. Clark Const. Group, Inc.*, 286 F.3d 737, 745 n.6 (4th Cir. 2022).  The current posture of Ayres's state court action—according to the parties' filings in this case and the Virginia state courts' public docket—indicates that the concurrent state court proceeding will not resolve whether any of the Defendants are liable to Ayres for violating the Virginia Motor Vehicle Warranty Enforcement Act, for breach of good faith, or for fraud.  Further, in *New Beckley*, the court explained that abstention was improper in part because one action sought compensation and the other sought equitable relief.  946 F.2d at 1074.  While Ayres seeks compensation in both actions, she only seeks equitable relief in the federal action.  These considerations together are enough to present "substantial doubt" that the state proceeding will completely resolve the issues between the parties.  *Moses H. Cone*, 460 U.S. at 28.  Because the state and federal actions are not parallel, abstention under *Colorado River* would be improper.

Abstention—either through dismissal or a stay—is not appropriate in this case.  The court declines to abstain, and Defendants' motions will be denied.

## IV.    Conclusion

For these reasons, the court will deny Defendants Cars2us and Aboulhosn's motions

to dismiss or to stay this suit.  (Dkts. 4, 5.)

An appropriate Order will issue.

**ENTERED** this <u>17th</u> day of July, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE